**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Case No. 2:09CR24**

**RAJAN BAKHSHISH MASIH, M.D.,**

        **Defendant.**

## OPINION / REPORT AND RECOMMENDATION

### I.
### Procedural History

October 6, 2009 Defendant was charged in a 24 count superseding indictment with 20 counts of aiding and abetting in illegal distribution of drugs by a physician to a patient and 4 counts of illegal distribution of drugs by a physician to a patient resulting in death in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2 [DE 23].

Pursuant to the District Judge's Order granting Defendant's Motion to Continue Trial [DE 35] Modified by Order dated November 30, 2009 [DE 38], on December 30, 2009 Defendant filed his Motion To Suppress Evidence Derived From Illegal Searches [DE 43]. On January 28, 2010 the United States filed her Objection To Defendant's Motion To Suppress Evidence [DE 50]. The United States filed her Supplemental Response To Motion To Suppress Evidence (Franks Hearing) on April 1, 2010 [DE 66] and Defendant filed his Supplement To Motion To Suppress Evidence Derived From Illegal Searches on April 2, 2010 [DE 67].

Hearing on the motion was continued from January 15, 2010 to February 9, 2010 to March

9, 2010 to March 15, 2010 and was finally held April 5, 2010 [DE 44, 52, 54, 58, 59 and 68].

Incident to these proceedings, the Government disclosed it had in hand a number of documents that Defendant claimed were privileged. Accordingly, the Government delivered what it designated as the "Taint Box" of documents to the Court for its *in camera* review. According to the Government the taint box contained documents seized or in its files which were handled and reviewed by the civil division attorneys and staff of the USA's office and not by the criminal prosecution team assigned to the within criminal action. Further, the Government asserts any privilege that existed was waived by Defendant with respect to documents that were seized from the automobiles when he gave consent for their search and/or by the fact that the documents were already in the Government's files as a result of subpoenas issued and executed to the West Virginia Board of Medicine (BOM) prior to the criminal search warrants. The Government also contends some of the documents were seized incident to the warranted search of the Masih house and therefore are covered by the Court's ruling they were properly seized under the warrant. Defendant maintained that no voluntary consent to search the vehicles was given and that the documents seized may constitute confidential attorney client privileged material.

## II
## Discussion

"A defendant who voluntarily consents to a search waives his Fourth Amendment rights, and the police officer may conduct the search without probable cause or a warrant." *United States v. Perrin,* 45 F.3d 869, 875 (4th Cir.1995); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In assessing the voluntariness of an individual's consent, we examine the totality of the circumstances. *See United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041. Appropriate factors to consider include "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." *United States*

*v. Lattimore,* 87 F.3d 647, 650 (4th Cir.1996). The government need not produce evidence that the defendant "knew of his right to refuse consent to prove that the consent was voluntary." *Id.*

By Opinion Report and Recommendation dated August 20, 2010 the magistrate judge opined that the search of the vehicles was consensual [DE 82] and did not recommend suppression of the items seized during the search. Accordingly, the documents seized during the search of the vehicles will not be suppressed on the grounds that they were the fruits of a coerced and involuntary consent to search absent review and contrary decision by the District Judge.

By virtue of the same Opinion Report and Recommendation the magistrate judge opined the search warrants issued for search of the medical clinic and house were supported by probable cause and that the Defendant had not carried his burden with respect for a Frank's hearing.

Accordingly, magistrate judge examined the documents submitted by the Government as an attachment to its March 29, 2010 letter (identified therein as "documents we received from the Board of Medicine prior to the search warrant's execution, ...") to determine if any of them matched documents in the "taint box" thereby making them arguably not suppressible by reason of the Government having obtained the records from a public entity prior to the searches in question. No common documents were found.

Existing case law makes it clear that voluntary consent to search by a person qualified to give such consent extinguishes the expectation of privacy.

Last year, the United States Supreme Court reaffirmed the principle that the search of property, without a warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment. **Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)**. Furthermore, recent opinions have established 'that the consent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared.' **United States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242** and cases cited ns. 4-6 (1974); accord, **Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)**. This common authority

is implied from the mutual use and control inherent in the consensual arrangement, and any expectation of privacy is extinguished by the ineluctable assumption that a co-user may permit intrusion by a third party. **415 U.S. at 171, n. 7, 94 S.Ct. at 993**.

Accordingly, Masih's voluntary consent to the search of his vehicles, extinguished his and his co-user wife's expectations of privacy in the contents of said automobiles.

The Government asserts Exhibits N-207, N-208, and N-211 were seized from the white Mercedes Benz motor vehicle registered to Masih during the consented to search of the same. The undersigned conducted an *in camera* review of N-207, N-208, and N-211 to determine, but for the validity of the consent to search, whether the documents would be privileged.

E-1, E-2, and E-3 (these three envelopes contain documents that constitute N-207) would not be privileged. E-1 one is a copy of Dr. Masih's attorney's response to the Board of Medicine relative to a complaint filed by JLR bearing complaint no 09-47-R. The attorney client privilege is waived by virtue of it being sent to the Board of Medicine with the understanding that the Board would send the response to the complainant. There are identifiers within the document that must be redacted should the same be utilized in the pending criminal action. E-2 is a copy of a letter from an attorney for Pilgrim's Pride requesting medical records relative to Dr. Masih's treatment of its employee relative a worker's compensation injury for use in the claim filed by the employee. There is no privilege issue involved. However, it contains the name and social security number of the claimant and therefore those as well as other identifiers must be removed or redacted prior to any use in the pending criminal action. E-3 is an August 4, 2009 letter from a lawyer representing a claimant in a personal injury type action requesting treatment records and medical bills for his client from Dr. Masih. Again, there is no privilege issue that would prevent disclosure but the document contains the name and social security number of the claimant and therefore those as well as other identifiers

must be removed or redacted prior to any use in the pending criminal action.

E-4, E-5, and E-6 (these three envelopes contain documents that constitute N-208) were reviewed for privilege. E-4 is a letter from T. Linkous, lawyer for Dr. Masih in a Board of Medicine complaint matter to John A. Lohmann, disciplinary counsel for the BOM, confirming a July 6, 2009 telephone conversation between them in which Lohmann agreed to give Masih more time to make a response to subpoenaed requests due to the death of Masih's father-in-law. This is not privileged. E-5 is a handwritten note from Barbara Masih to the lawyer obviously questioning an unidentified matter and seeking an answer (advice) with respect to the same. Therefore, as to Barbara Masih, but for the consent to search, the document would be not be disclosed because it constitutes attorney client privilege. However, since it was located during the consensual search of the car, the consent waives the privilege. E-6 is clearly a communication between the lawyer and Dr. Masih concerning a BOM complaint matter in which the lawyer clearly advises Dr. Masih. But for the waiver of privilege provided by the consent to search the car, it would not be subject to disclosure.

E-7 (N-211) is the deposition transcript of R.S. and spouse taken in the civil suit then pending against Dr. Masih and others bearing Grant County West Virginia Circuit Court No. 08-C-19 and transmittal letter from Dr. Masih's lawyer in the case, Timothy R. Linkous, to Dr. Masih without more. These documents were found in the Mercedes car during the consensual search. The depositions were taken in a matter of public record, a civil action, and are not privileged. The transmittal letter contains no privileged information or advice and does not itself make the public record deposition privileged. But for them being found during the consensual search of the Mercedes, the attorneys transmittal letter would be privileged but the deposition would not. However, since they both were found during the consented to search of the Mercedes, they are not subject to suppression or claim of privilege. The deposition may have personal identifiers in the

same which must be redacted prior to use in the within criminal action.

E-8 constitutes correspondence from lawyers representing clients who were treated by Dr. Masih for his records and billings with respect to the treatments for use in various cases not against Dr. Masih. These are not attorney client privileged. They were found in the Defendant's office during the warranted search of the same. However, the warrant is not broad enough in scope to cover the seizure of these particular documents. Items to be seized must be described with particularity to prevent "the seizure of one thing under a warrant describing another." Marron v. United States, 275 U.S. 192, 196 (1927); Groth v. Ramirez, 540 U.S. 551, 557-563 (2004); and Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). The Fourth Circuit has taken a pragmatic approach noting that the "specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved ...." United States v. Torch, 609 F.2d 1088, 1090 (4th Cir. 1979). It is clear that the police were looking for records that support their contention that the Defendant Dr. Masih was operating a business of prescribing controlled substances to people not for a medical purpose. While the evidence to support such a claim may be broad in scope, it would not include requests for medical records and billings by lawyers for their use in representing their clients in workers compensation claim cases, personal injury cases, and claims against persons other than the Defendant. Accordingly, the E-8 documents must be suppressed.[1]

E-9 is a copy of a state magistrate court civil complaint filed by Fred Bearfield against Barbara Masih and the Masih Clinic for alleged withholding of personal property and damages and

---

[1]There is nothing to indicate the E-8 documents were seized improperly by the police. It appears these documents were merely seized as part of a large volume of documents and after being sorted, it appeared there may be some question as to whether they should have been seized and the matter was brought to the Court's attention as an adjunct to the suppression hearing.

the fax transmittal note from Barbara Masih transmitting the complaint to her lawyer. The copy of the complaint is a matter of public record and not privileged and not subject to suppression.

E-10 is clearly an itemized billing statement from the lawyer to Dr. Masih for representation in a BOM complaint matter in which the lawyer clearly sets forth what has been done in Dr. Masih's behalf thereby disclosing strategy and advice. This document was found in the search of the computer room in Dr. Masih residence during its warranted search. It is a confidential communication between client and lawyer on a then pending legal matter. Since the search was by warrant, there was no voluntary consent or waiver of privilege. E-10 is suppressed as confidential attorney client communications.

E-11 appears to be hand written notes in the margin of the lawyer's drafted response to a BOM complaint case against Dr. Masih. Accordingly, it is a confidential communication between client and lawyer on a then pending legal matter. This document was found in the search of the computer room in Dr. Masih residence during its warranted search. Since the search was by warrant, there was no voluntary consent or waiver of privilege. E-10 is suppressed as confidential attorney client communications.

E-12 is a handwritten note from Barbara Masih to a lawyer asking a question and seeking advice. It constitutes attorney client privilege. It was removed the master bedroom of Defendant's residence during the warranted search of the same. It is privileged attorney client communication not waived, not covered by the parameters of the search warrant, and therefore subject to suppression.

E-13 is lawyer to lawyer communications transmitting a proposed order dismissing Dr. Masih from the Grant County West Virginia Circuit Court No. 08-C-19 civil action. It was removed the master bedroom of Defendant's residence during the warranted search of the same. It is not covered

by the parameters of the search warrant,  is not privileged, but is subject to suppression because of it being outside of the parameters of the search warrant..

E-14 is a lawyer's letter (a lawyer not representing Dr. Masih) to Dr. Masih and others confirming their respective appearances in court as witnesses for the client the lawyer represented in a civil case that did not involve Dr. Masih as a party.  It is not covered by the parameters of the search warrant,  is not privileged, but is subject to suppression because of it being outside of the parameters of the search warrant.

E-15 is a letter form memorandum prepared by a lawyer representing Dr. Masih in a pending civil action to insurance attorneys and claims representatives outlining the opinions of the retained defense expert witness, expressing opinions concerning the case, and outlining strategy.  The case involves alleged failure to properly diagnose and treat appendicitis in a 4.5 year old child.  The report memo was seized during the warranted  search of the basement of Dr. Masih's house.   It is not covered by the parameters of the search warrant,  is  privileged, and therefore is subject to suppression.

E-16 is a letter written from the defense lawyer (lawyer representing Dr. Masih) to plaintiff's lawyer in  the Grant County West Virginia Circuit Court No. 08-C-19 civil action.  It was seized during the warranted  search of the basement of Dr. Masih's house.  Accordingly, it is not privileged but is clearly outside of the  parameters of the search warrant and is subject to suppression.

E-17 is a memorandum letter from Dr. Masih's lawyer to insurance attorneys and claims representatives, expert witnesses and Dr. Masih in which the lawyer provides his analysis of  the Grant County West Virginia Circuit Court No. 08-C-19 civil action against Dr. Masih.  It was seized during the warranted  search of the basement of Dr. Masih's house.  It is not covered by the parameters of the search warrant,  is  privileged, and therefore is subject to suppression.

E-18 is a letter written from the defense lawyer (lawyer representing Dr. Masih) to plaintiff's lawyer in the Grant County West Virginia Circuit Court No. 08-C-19 civil action. Accordingly, it is not privileged. It was seized from the kitchen during the warranted search of Dr. Masih's residence. It is outside of the parameters of the search warrant. For these reasons it is subject to suppression.

E-19 is a copy of a complaint filed with the BOM by VM against Grant Memorial Hospital and Joshua Dower; a release signed by VM authorizing GMH ER to release VM's medical records of 5/13/09 to Masih Medical Practices; and a copy of GMH ER discharge instructions. These documents are clearly not privileged as they involve a third party and are part of the records of the public body - WVBOM. They were seized from the bedroom during the warranted search of Dr. Masih's residence. They are outside of the parameters of they search warrant and therefore subject to suppression even though they are not privileged.

### III.
### RECOMMENDED DECISION

For the reasons stated herein it is recommended that E-1, E-2, E-3, E-4, E-5, E-6, E-7 and E-9, not be suppressed.

For the reasons stated herein it is recommended E-8, E-11, E-12, E-13, E-14, E-15, E-16, E-17, E-18, and E-19 be suppressed.

For the reasons stated herein the documents seized and in possession of the Government that are not suppressed may contain personal identifiers which must be redacted by the Government in accord with law prior to disclosure and use in the within litigation.

For the reasons stated herein it is recommended that the documents attached to the Government's letter dated March 30, 2010, the original of which is submitted with and the clerk is

directed to file under seal as the part of the documents reviewed *in camera,* which constitute the BOM complaint of Edward Matheny and related documents (48 +/- pages), are not privileged and are should not be suppressed but they contain personal identifiers which must be redacted by the Government in accord with law prior to disclosure and use in the within litigation.

The clerk is also directed to file the Taint Box documents:  E-1, E-2, E-3, E-4, E-5, E-6, E-7, E-8, E-9, E-10, E-11, E-12,  E-13, E-14, E-15, E-16, E-17, E-18, and E-19 under seal as the part of the documents reviewed *in camera*.

Nothing in this Opinion, Report and Recommendation expresses or is intended to express any opinion on the admissibility of  or the evidentiary value, if any, of any of the documents reviewed.

Any party may, within fourteen (14) days after being served with a copy of this Opinion, Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Opinion, Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge.  Failure to timely file objections to the Opinion, Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to provide copies of this Opinion, Report and Recommendation to counsel for the parties of record.

Dated: August 31, 2010

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE